May it please the Court, my name is Jenny Jordanae, pro bono student counsel, and along with Larry Howell, we represent the appellant in this matter, Michael Sattari. Two issues are before the Court today. One, should the... The District Court erroneously concluded on a motion for summary judgment that there was no other evidence that the bank told Mr. Sattari to not make payments when Chase admits that it told him that he would have to show distress and be in default before it would consider his modification request. And before I proceed, Your Honor, I'd like to request two minutes for rebuttal. You have a clock in front of you, and whatever's left there is all yours. Thank you. Now, admittedly, Mr. Sattari's complaint is not a model of clarity. Yet, despite its inartful drafting, it's clear the allegations that he alleges. And at the heart of Mr. Sattari's complaint is his allegation of unfair and deceptive trade practices by the bank. Well, let's suppose that the District Court should have construed his pro se complaint liberally to state a claim under Nevada law. Why isn't the bank still entitled to summary judgment under Nevada law? Your Honor, the bank is not entitled to summary judgment primarily because there's a question of fact regarding the bank's admitted statements to Mr. Sattari. And under Nevada law, an allegation of unfair business practices requires a knowing making a knowing or knowingly making a false representation. What's false? That's the question of fact, Your Honor. But what is your version of what is false? You can't just come in and say there could be a false statement. What in the record, from your perspective, could demonstrate falsity? Your Honor, Chase's admitted statement that it told Mr. Sattari that distress and default were a prerequisite to a mortgage modification, whether or not that is in fact a true statement that default and distress were required before he could pursue a modification. Is there any evidence in the record to suggest that that statement is false as opposed to unfortunate? No, Your Honor. There's no evidence in the record either way. However, it isn't at the plaintiff's burden to show that there is a genuine remaining question as to falsity, not just say, well, if it were false, it would be a big deal. Correct, Your Honor. The burden here, though, was on Chase because they were the party moving for summary judgment. And there's no evidence that suggests that, in fact, that statement was true, and that's the heart of Mr. Sattari's complaint. And in fact, the Nevada Attorney General, along with several other attorneys general, have indicated that such a statement is deceptively false. Now, Mr. Sattari diligently sought to amend his complaint, which this Court has stated as the primary consideration for amendment under Rule 16b's good cause standard. Mr. Sattari recognized his complaint. I just want to think this through because it's important. So your position is he makes a statement. He alleges I was told X. Correct, Your Honor. Which is a statement. And we have to accept that. Which the bank admits telling him. It doesn't matter. We have to accept it as true for purpose of summary judgment. Correct. So it's true. It doesn't matter. So he then next says that's a false statement. Right? Correct. And in your view, in order to create to get summary judgment, the bank has to come in and prove that there's no dispute about the falsity of the statement without any evidence on your client's part that the statement is false? Your Honor. I mean, I'd like to understand this. I just. And I'm not sure I'm tracking you. I mean, he says it's not true. Not true is also a fact. He took, Your Honor, Mr. Sattari took that statement to be true, and it's undisputed that Mr. Sattari's payment history was impeccable up until the bank made that mistake. Right. I'm with you that far. But your position is the statement was, in fact, not true. Correct. And it is your position that he doesn't need to put in any evidence that it's not true. No, Your Honor. He doesn't have to come in with a statement by somebody who knows, saying, no, that's not true. He doesn't have to come up with any expert testimony or anything like that. He can just allege, claim it's not true, and then the bank has to put in evidence that it is true? Your Honor, that's a question of fact that is appropriate for resolution at trial, not on a motion for summary judgment. And that's our position, that the bank did not meet their burden. But in opposing a summary judgment, you can't just rely on allegations. There has to be evidence once you're put to that burden by the motion for summary judgment. And it seems to me that your client's actions stemmed from a belief that the statement was true and not false. Correct, Your Honor. Well, then what evidence, if all the evidence is either neutral or points towards truth, I don't understand why there is a genuine issue of fact on falsity. Your Honor, Mr. Sitari, not only did he believe that that statement had induced him to default on his mortgage, but the bank took that to mean, or Mr. Sitari took that to mean that he should quit making his payments. He had not been current on his loan up until that point. That's not pertinent to falsity. It's – it may not be pertinent to falsity, Your Honor. But if, in fact, that statement that the bank made was false, that he did not – if he did not have to be in default or show distress. Let's get past the question of who has a burden. What evidence is there in the record that the statement is false? What reason do we have to think that the statement is not true? Well, Your Honor, the first thing that comes to mind, while it's not reflected in the record, is it seems counterintuitive that a bank would only modify a mortgage for somebody who's already in default, for somebody who is missing their payments. It does not stand to reason. There are many weird things in the law. Correct, Your Honor. No, I'm not trying to be facetious. You know, there are a lot of things that seem counterintuitive. It seems counterintuitive to me, but makes some sort of weird sense. Is there anything – you mentioned attorney general's statements. You know, what are you referring to there? Correct. The State of Nevada has made allegations against other large banks that such a statement that distress in default. And are those in the record? Those came out, Your Honor, after briefs were submitted and after the – That's a long no? Correct. But what is in the record? And you didn't move to supplement the record. Your Honor, we, in our reply brief, we supplemented with a consent order that Chase entered that with the OCC and the FDIC, which is reflected in the record where Chase does not admit wrongdoing, however, where the OCC and other Federal regulators found that the bank was engaged. That's not this litigant, though. Correct, Your Honor. So is there anything in the record about this bank? I mean, it's one – you know, it's kind of like guilt by association. If you're a bank and one bank has done something bad or four banks have, then this one must have, too? No, Your Honor. Our position is, is that the bank and the OCC consent order, you know, substantiates Mr. Sotari's allegations, you know, and adds credence to them. The record is, as is probably typical with pro se litigants, it's incomplete and that's why it needs to go back for a trial, Your Honor. Thank you.  Thank you. We'll hear from the bank. Good morning, judges. May it please the Court. My name is Katie Weber and I'm here representing JPMorgan Chase Bank N.A. as an acquirer of certain assets and liabilities of Washington Mutual Bank from the FDIC, acting as receiver. Let me just follow up right where counsel left off, talking about – Could you speak a little louder, please? Certainly. The alleged false statement. I just wanted to note that not only was there no evidence in the record showing that that – or even potentially showing that that was a false statement, that being that you have to be in distress and or in default in order to be considered for a loan modification, but I don't believe plaintiff even alleged that that statement was false. And I'm sure I'll be corrected by counsel if I'm wrong about that, but I don't think it's in the complaint. The complaint states that there was an oral agreement that foreclosure would be stopped during the modification process, and so there may be an allegation of a false statement there. However, that statement would also not be false, because indeed foreclosure did not happen during the modification review process. And to the state – Well, I'm sorry. When did it happen? To this – They turned them down and then they foreclosed. To this date, foreclosure has not happened. Certain notices have gone out. A notice of default went out. Any notice of trustee sale has gone out. But – Can he cure? He can. Still to this day he can cure and foreclosure won't go forward. And in fact, in his deposition testimony, he actually indicated that he may have some resources that would allow him to cure. So this has been something like two and a half years since the filing of the complaint and there's still been no foreclosure? That is correct. And no payments have been made during that time either. Although it depends a little bit on what you mean by foreclosure. If you mean foreclosure means a completed foreclosure, the property is gone, you know, that's one way of looking at it. If you mean we will not commence foreclosure proceedings, then if you look at the sort of leading edge of foreclosure, the beginning tip, when did that happen in relation to the modification process? The notice of default, which under Nevada law would be the start of the foreclosure process, admittedly did go out prior to the modification denial. So why is that a false statement right there? Well, his allegation was simply that foreclosure would be stopped. It wasn't that the foreclosure process would be stopped. It wasn't that normal proceedings leading up to foreclosure would not commence. That sounds like lawyers quibbling to me. If I were a homeowner and the bank said we're going to stop, you know, we want you to go into default so we can do this modification, but we will stop foreclosure, I would expect this means we will not take any steps at all to foreclose, not send any notices out, nothing. That's what I would think. And if they came back with a bunch of lawyers' talk, I'd say, boy, that's a bunch of lawyers' talk. That's what I would think. Well, and I would respectfully disagree that until there's an actual sell of the property, he's still in the home. No one's bought it, taken it away from him. And the notice of default, while technically it might be the beginning of the process, really only lets him know, okay, you're in default, which he already knew, because indeed he intentionally went into default. Well, it's a good argument that you could make to a jury, and that would be fine. Maybe they'll buy it. Maybe they won't. But if, in fact, the bank said to him what is reasonably understood to be, go ahead and default because we need to start this modification process, but don't worry. We won't foreclose on you. We won't take any steps towards foreclosure. You know, this is just technicality because we want to start the modification process. And then the bank goes ahead and starts the process. I think a jury might not look at that kindly. Well, I'll tell you why it's not an issue of fact for a jury, and that is because he could not reasonably rely on that statement in any event because it was not an enforceable promise. In other words, under the statute of frauds, any agreement to stop foreclosure on a real property would not be enforceable if it was just an oral agreement. Absolutely. And you're right. And if this were an attempt to enforce that promise, then you would certainly have a good argument. But this is an unfair business practices claim. So an unenforceable promise that is deceptive is the basis for that kind of claim. The fact that it's not enforceable and that the bank is saying it anyway only adds to this wrongfulness. The fact that it's going around making promises that it knows but that the consumer doesn't know are not enforceable because of statute of frauds just makes it worse. So unenforceable promises, you know, it may be fine among lawyers, and if you're in law school you can say, ah, I've got a good answer to this, but you're dealing with a consumer here. So how does that help you at all? It would still be our argument that you cannot justifiably rely. You may rely on a statement that's an unenforceable promise, but you can't justifiably I agree with you. You are right. You might, you probably cannot justifiably rely on it. But we're not talking here about justifiable reliance, which is a contract concept. We're talking about a business engaging in an unfair business practice. So that's the claim you have to deal with. Okay. Well, let me. It strikes me that given the fact he's still in possession, foreclosure has not occurred, have there been any discussions with our court mediator about trying to resolve this case short of a final decision? There have not been, no. Would it be something that perhaps your client might want to consider? I think my client would consider that. My only concern is if Mr. Satare is still looking for modification, for example, as a possible resolution here, his income is very limited. The income that he submitted previously showed that he was making about $300 a month in Social Security, showed that he was making $1,200 a month from a rental property, but indeed that money should have been going to pay the mortgage on the rental property, which still would have been short about $300. So in short, I'm just concerned that he would probably still not qualify for any type of modification because his income doesn't support being able to pay really any kind of, I mean. Well, I'm just wondering, perhaps circumstances may have changed since your last information, and we do have a very, very capable staff here in the court to whom this case could be referred if there's enough of an indication that it would be useful. I just mentioned that to my colleagues. Sure. It's certainly something we can consider. If that's something Mr. Satare wants to look into, I'm sure that my client would consider it, certainly. If I can get back to, real quickly, since I have two minutes, unfair and deceptive trade practices. This, and I apologize, this wasn't in our brief, but I think the law has been clarified since then with respect to Nevada's deceptive trade practices statute specifically. The statutes say that they relate to the sales of goods and services, and at least one Nevada district court has now clarified that that means they do not relate to the sale of real property. And so even if he did assert a claim under deceptive trade practices under Nevada law, it still wouldn't apply to his transaction here. Why? This was not a sale of real property. This was a sale of a service, which is a loan. I don't know how this has to do with was a bank selling property? No, in the context of the case law I'm referring to, and if it's helpful, I can provide a supplement. But it actually was in the context of a real estate loan, so maybe I didn't clarify that well enough, that it doesn't apply to real estate transactions, meaning the loan transaction. And as I said, I can't. If you have supplemental authority, you can send a 28-J letter. When did you become aware of this? I think that decision came out just in the last few months. I'm not sure exactly. Months? Yes. And when did you become aware of it? I really couldn't tell you. Today? No, no. Yesterday? No. Okay. So you have plenty of time to notify opposing counsel and us by sending a 28-J letter. You're aware of the 28-J letter process, right? Yes, I am. Okay. And you know that that is the appropriate way to proceed, and that way opposing counsel can read the case and respond to it, right? Right. We can examine it, and we can ask you questions about it, rather than spring into all arguments. You realize this is not the right way to proceed. I understand, and I apologize for that. Yes. But I at least wanted to make a note of it now. Okay. Thank you. Okay. Thank you. You have about a minute left for a bottle. We'll give you a full minute. You might start off by addressing Judge O'Scanlan's questions about possible mediation, and we won't charge her to your time. Your Honor, that was going to be my first point. And Mr. Sitari, the Court contacted, you know, both parties regarding mediation. I think it is best not to tell us what parties say in response to mediation requests, just since you're not so experienced. Mr. Sitari is willing. We want to hear what your position is now, but we do not want to hear about prior mediation efforts or any position taken by your parties. Okay, Your Honor. Just to be clear. Sure, Mr. Sitari. So in answer to Judge O'Scanlan's question, Ms. Sitari would be interested or willing to mediate, to attempt to mediate the dispute? Yes, Your Honor. Mr. Sitari would be willing to consider mediating the dispute. Okay. You may proceed with your minute. Okay. Your Honor, my brief time that I have left, I'd just like to point out the fact that Mr. Sitari's unfair trade practices allegation was never addressed by the district court. Or if you just, you know, a real cursory glance at the district court's opinion, the district court did not address it, other than to dismiss it because it was based on the wrong State's law. However, the district court did analyze the other inappropriately or inaccurately pled allegations. Had the district court allowed Mr. Sitari to amend, the district court would have been forced, you know, to analyze it under Nevada's deceptive trade practices law and to explain why the bank's admitted statement was not a false representation that caused Mr. Sitari damages. We respectfully ask this Court to reverse the district court and allow Mr. Sitari to amend his complaint. Thank you. Okay. Thank you very much. We will defer submission of the case and confer, and if appropriate, after we've had a chance to talk to each other, we will either issue an order submitting the case for decision or referring it to mediation based on the presentation of both parties that they are interested in mediating. While, you know, I can't speak for the panel until we've had a chance to confer, but I think there's certainly a good chance that we will go ahead and defer the case to mediation. If you have any questions on the possibility that this will happen, you might stop in and check with our mediation office and just give your contact information and make them aware of the possible referral. The deputy clerk will advise you where they are in the building. Thank you. Thank you very much. So we'll defer submission of this case. We'll now hear argument in the next case on the calendar, which is
judges: Kozinski, O'scannlain, Graber